Roren Drop Forging Company *vs.* Union Manufactur-
ing and Drop Forging Company.

FEBRUARY 17, 1915.

Present: Johnson, C. J., Parkhurst, Sweetland, Vincent, and Baker, JJ.

*(1)   Corporations.   Officers.*

The treasurer or secretary of a corporation cannot bind it except within the
scope of the authority given to them by the corporation; they have no
authority merely by virtue of their offices, or unless entrusted with the

general management or with the management of a particular part of the business.

*(2)   Corporations.   Officers.*

Plaintiff received an order from R. P. & Co. for certain tools, which order it turned over to defendant, who was to manufacture them under an agreement with plaintiff.   It was stipulated in the order that the tools were not to be made until a satisfactory sample had been accepted by R. P. & Co.

*Held,* that testimony as to the admission by the general superintendent of defendant who had charge of the preparation of the sample, that R. P. & Co. had approved the sample, was admissible as being within the scope of the authority of the witness.

*(3)   Evidence.   Contracts.   Ambiguity.*

Agreement between parties provided that in consideration of the payment of a stated sum by defendant to plaintiff it was agreed that all claims of any nature whatsoever of plaintiff against defendant, and all claims of defendant against plaintiff should be cancelled and that all contracts written or verbal should be cancelled, "it being understood however that this agreement does not affect any contracts or agreements covering commisions to be paid for work yet to be performed."

*Held,* that from an examination of the evidence it appeared that the words "contracts or agreements covering commissions" were used inaccurately, therefore allowing resort to extrinsic evidence to determine which contracts were covered by the exception.

Assumpsit.   Heard on exceptions of both parties and all exceptions overruled.

Johnson, C. J.   This is an action on the case brought by the Roren Drop Forging Company, a corporation organized under the laws of the State of Rhode Island, against the Union Manufacturing and Drop Forge Company, a corporation organized under the laws of the State of Massachusetts, and doing business in the town of East Providence, in the county of Providence, for breach of a contract to fill an order for certain tools, which said order was secured by the plaintiff and transferred to the defendant upon an agreement by said defendant to fill the same.   The contract and the breach thereof are set out in the plaintiff's second amended declaration.   By stipulation of the parties all pleadings in the case except the second amended declaration and a plea of the general issue were disregarded and it was

agreed that under such plea all defences, whether or not such as but for this stipulation would be required to be specially pleaded and all replies thereto might be used and given in evidence at the trial. The defence of the action was assumed by the Standard Wrench and Tool Company as purchasers of the bankrupt estate of the first defendant, and the defendant, William B. Greenough, as trustee in bankruptcy for the Standard Wrench and Tool Company, has intervened by leave of court. Jury trial was waived and the cause was heard by the Presiding Justice of the Superior Court, who rendered a decision for the plaintiff for $2,200 and interest. Both parties duly excepted and the cause is before this court upon the bills of exceptions of both plaintiff and defendant.

From the evidence it appears that the plaintiff corporation on April 7, 1910, received an order from Rogers-Printz and Company, of Warren, Pennsylvania, for wrenches of the value of $60,000. As the plant of the plaintiff was at that date under contract of sale to the Union Manufacturing and Drop Forge Company, the plaintiff transferred the order to the latter which agreed to invoice manufactured wrenches to said Rogers-Printz and Company at the scale of prices stipulated in said order and to pay to said Roren Drop Forging Company, the difference between said prices and those at which said Union Manufacturing and Drop Forge Company were to manufacture the same, payments due to be made in periods not exceeding thirty days. Two types of wrenches were included in the order, viz.: *bolt* wrenches of the value of $29,600, for which part of the order the payments to be made by said Union Manufacturing and Drop Forge Company amounted to $2,200; and *pipe* wrenches of the value of $30,400, for which part of the order the payments to be so made amounted to $4,600. It was, however, stipulated in said order that the pipe wrenches were not to be made until a satisfactory sample had been submitted and accepted by Rogers-Printz and Company. The defendant did not fill said order.

The existence of this contract and the terms of this transfer are not disputed. The defendant, however, produced an agreement or release and claimed that it was excused thereby from all obligation with respect to the contract sued upon. Said release is as follows:

"PROVIDENCE, R. I., December 14, 1910.

Memo. of Agreement Between Union M'fg & Drop Forge Company & Roren Drop Forging Company Entered Into December 14, 1910 at Office of said Union M'fg & Drop Forge Company.

In consideration of the payment of Fifteen hundred Dollars ($1,500.00) to be made within thirty (30) days to the Roren Drop Forging Company, it is agreed that all claims of any nature whatsoever of the Roren Drop Forging Company against the Union Manufacturing & Drop Forge Company, and all claims of said Union Manufacturing & Drop Forge Company against said Roren Drop Forging Company, are hereby cancelled and satisfied, and that all contracts written or verbal are hereby cancelled. It being understood, however, that this agreement does not effect any contracts or agreements covering commissions to be paid for work yet to be performed.

> ROREN DROP FORGING CO.
>
> (Signed)                    ALBERT ROREN *Pres.*
>
> UNION MFG. & DROP FORGE CO.
>
> WM. H. J. FITZGERALD *Prest.*"

The plaintiff does not dispute the execution of this release nor that good consideration was given therefor, but it does insist that by the last sentence thereof the contract sued upon, known between the parties as the Rogers-Printz contract, was excepted from the operation of said release. The evidence in the case bears very largely either directly or indirectly upon this contention of the plaintiff.

The plaintiff's exceptions are:

"First.—To the finding in the rescript that certain testimony was inadmissible as follows: Pages 3 and 4, 'The witness Roren testified that the secretary of the company had admitted the approval of the sample pipe wrench. This testimony was admitted *de bene.* On consideration thereof, we think the testimony was inadmissible.'

"Second.—To the decision of the trial justice in favor of the plaintiff for only twenty-two hundred dollars ($2,200), with interest from the date of its writ, the plaintiff claiming the decision should have been for Sixty-eight hundred dollars ($6,800), with interest from the date of its writ. Page 6.

"Third.—To the finding of the trial justice 'that the plaintiff's evidence fails to show that the Rogers-Printz Company ever took or were bound to take any pipe wrenches,' and refusing to allow plaintiff forty-six hundred dollars ($4,600) for same. pp. 5 and 6."

(1) The ruling which was the subject of the plaintiff's first exception was proper for the reason given by the Presiding Justice, viz.: "The treasurer or secretary of a corporation cannot bind it except within the scope of the authority given to them by the corporation, for they have no authority to bind the córporation merely by virtue of their office, or unless entrusted with the general management or with the management of a particular part of it. The secretary Moran was not entrusted with the general management of the business, nor was he entrusted with the preparation of the sample wrench."

The finding in the rescript which is the subject of plaintiff's third exception, viz.:" that the plaintiff's evidence fails to show that the Rogers-Printz Company ever took or were bound to take any pipe wrenches," is supported by the evidence. The decision which is the subject of plaintiff's second exception is based upon the finding which was the subject of said third exception. The plaintiff's second and third exceptions are therefore without merit.

The defendant's first and second exceptions are:

"1.   To the ruling of said Presiding Justice admitting *de bene* certain evidence as shown on page 7 of the transcript of testimony in said cause.

"2.   To the ruling of said Presiding Justice holding said evidence admitted *de bene* as aforesaid to be competent and admissible as set forth on page 4 of the rescript filed by said Presiding Justice on the 12th day of March, A. D. 1914."

Mr. Roren testified to the admission of Hollander, the General Superintendent of the defendant, that the Rogers-Printz Company had said that the sample wrench was a dandy wrench. The testimony was admitted *de bene*. Upon this the court said in his rescript:   "If this could be taken as a fulfillment of the condition of the approval we think it would be admissible as being within the scope of the authority of the witness Hollander.   He was the general superintendent of the company, who had charge of the mechanical work and of the preparation of the sample wrench."   .   .   .   "The witness Roren had a sufficient interest to entitle him to inquire of the proper person as to whether a sample wrench had been prepared and accepted. We therefore think that the testimony as to the admission of the witness Hollander was admissible as being within the scope of the authority of said witness Hollander; but when the witness Hollander was himself examined, he gave the source of the only knowledge he had in making the admission. He testified that his knowledge of approval by the Rogers-Printz Company was the fact that a Mr. William Rogers approved it.   He was unable to say, however, and we know of no testimony which shows that William Rogers had any authority to bind the Rogers-Printz Company by such an approval."

We think the court's ruling was correct.   The defendant certainly was not injured by the ruling.   The defendant takes nothing by said first and second exceptions.

The defendant's third exception is "To the decision of said Presiding Justice as set forth in the rescript filed in said cause on the 12th day of March, A. D. 1914."

The defendant's counsel claim that the court permitted the enlargement by parole evidence of the last sentence of the (3) release. Certain testimony was introduced as to the intention of the parties with regard to the inclusion of the Rogers-Printz and Company contract in the exception contained in said last sentence of the release. No objection was made to the admission of this testimony.

In his rescript, the Presiding Justice says: "One ground of defence offered is that the Rogers-Printz Company contract was not a contract covering commissions since it was merely a sale of a contract and not a commission or percentage to be paid to the plaintiff company for its services in acting as agent for the defendant company.

"It is argued that the word 'commission' has an accepted legal meaning which should govern. It is also argued that there were contracts covering commissions which would be covered by the exception in the release in question. If this were true, it would be a perfect defence. In examining, however, the other contracts which are said to be commission contracts, it seems to us that they are no more commission contracts than the Rogers-Printz Company contract. The dies and tools contract was simply an agreement that the plaintiff should have 5% of the contract price thereafter obtained by the defendant company where the dies and tools previously turned over to the defendant company by the plaintiff company were used. In this case the plaintiff no more acted as agent for the defendant in obtaining contracts than it did in the case of the Rogers-Printz Company contract, in which case the plaintiff was to have a certain percentage or portion of the contract price received by the defendant. In the one case the plaintiff had secured the contract for itself and turned it over to the defendant, and in the other case the defendant was to secure the contracts for itself and merely turn over to the plaintiff a certain percentage.

We cannot see that one was any more a commission contract than the other. It therefore follows that in using the words commission contracts or agreements covering commissions, the parties were using the word 'commission' inaccurately. The words 'commission contract' were as applicable to the Rogers-Printz Company contract as to the others. This inaccurate use of the words commission contracts or agreements may allow a resort to extrinsic evidence to determine which contracts were covered by the exception in the release.

"We read the evidence in the case and are of the opinion that the plaintiff's claim that the Rogers-Printz Company contract was included in the exception of the release is established by a fair preponderance of the evidence, if the burden can be said to be upon the plaintiff under the circumstances. We see nothing in the particulars of the case to satisfy us that the plaintiff intended to give up the benefit of the Rogers-Printz Company contract on which its expectations were wholly in the future. The purpose of the compromise seems to have been to settle and adjust all claims which had accrued at the time.".

The contention of defendant's counsel is that as the exception in the release refers to contracts or agreements covering commissions, and the dies and tools contract is such a contract, said dies and tools contract is the only contract excepted from the operation of the release. They say in their brief: "It is only by virtue of the added sentence that the plaintiff has any standing whatever. The action of the Presiding Justice in receiving evidence regarding the meaning of the same was not objected to because it was conceived that in accordance with the ruling of *Myron* v. *R. R. Co., ubi supra* (19 R. I. 125, 126), and the doctrine as laid down by Professor Wigmore in the passage cited *supra* (4 Wigmore on Evidence, § 2425, p. 3437 (1), (2), such evidence was admissible for the purpose of explaining the extent of the class of contracts referred to as commission contracts. The exception taken is to the ruling of the court appearing in the rescript permitting certain of such evidence to enlarge the

clearly indicated meaning of such sentence as distinguished from using the same only as an aid to interpretation thereof. For it appeared in evidence that there was a class of contracts clearly regarded by the parties as 'commission contracts' to which the clause had application.   Reference is made to the so-called general dies and tools contract (Deft's Exhibit, No. 4) clear 5% commission contracts whose preservation was the natural object of both parties to the agreement."

The court, however, found that said dies and tools contract was no more a commission contract than was the Rogers-Printz Contract and that this "inaccurate use of the words 'commission contracts or agreements' may allow a resort to extrinsic evidence to determine which contracts were covered by the exception in the release."

"Extrinsic evidence" includes any evidence outside of the release, and the language of the court shows that he considered all the evidence in the case and held that the plaintiff's claim that the Rogers-Printz Company contract was included in the exception of the release is established by a fair preponderance of the evidence.   He says: "We see nothing in the particulars of the case to satisfy us that the plaintiff intended to give up the benefit of the Rogers-Printz contract on which its expectations were wholly in the future."   He then says: "The purpose of the compromise seems to have been to settle and adjust all claims which had accrued at this time." The "purpose of the compromise" must mean the purpose of the parties as expressed in the compromise, when viewed in the light of the evidence in the case.

The release covers all claims by either of the parties against the other.   It then provides: "and that all contracts written or verbal are hereby cancelled."   This is followed by the excepting clause above quoted.   From the evidence it appears that all the contracts between the parties other than the dies and tools, and the Rogers-Printz and Company contracts had reached the condition by performance or adjustment where there was no further work to be per-

formed upon which payments or commissions could be claimed.

In the case of the dies and tools contract, the dies and tools were the property of the plaintiff and were delivered over by it to the defendant upon an agreement to pay to plaintiff five per cent. upon all work done with said dies and tools.  In the case of the Rogers-Printz and Company, the order was secured from said company by the plaintiff, and was transferred to the defendant to be filled, the wrenches to be delivered to said Rogers-Printz and Company at the prices stipulated in the order, and the difference between those prices and the prices for which the defendant was to manufacture said wrenches was to be paid to the plaintiff.

The dies and tools were the property of the plaintiff and so was the order for wrenches.  Both were turned over to the defendant and upon both the defendant was to make payments to the plaintiff, in the case of the dies and tools five per cent. upon all work, and in the case of the order, the difference between the price per wrench stipulated in the order and the agreed price of manufacture by the defendant.

Neither of said contracts were strictly commission contracts.  Both had the common feature that what was to be paid on them was "for work yet to be performed."  We think the evidence justified the court in saying:  "The purpose of the compromise seems to have been to settle and adjust all claims which had accrued at the time."

Defendant's counsel do not claim that the evidence as to intention was inadmissible.  They say that the action of the Presiding Justice in receiving evidence regarding the meaning was not objected to because it was conceived that such evidence was admissible for the purpose of explaining the extent of the class of contracts referred to as commission contracts.

We do not find in the rescript a ruling permitting, as defendant's counsel say:  "certain of such evidence to enlarge the clearly indicated meaning of such sentence as distinguished from using the same only as an aid to interpretation thereof."

Our examination of the evidence discloses no good ground for disturbing the decision of the Presiding Justice. All the exceptions, both those of the plaintiff, and those of the defendant, are overruled, and the case is remitted to the Superior Court with direction to enter judgment for the plaintiff upon the decision.

*Bassett and Raymond,* for plaintiff.

*R. W. Richmond,* of counsel.

*Tillinghast and Collins, James C. Collins, Harold B. Tanner,* for defendant.